## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

**TRIEST IRRIGATION LLC**,

      Plaintiff,

v.                                                          Civil Action No. 7:18-CV-155 (HL)

**DONALD VANCE HIERS, et al.**,

      Defendants.

## ORDER

Plaintiff TriEst Irrigation LLC ("TriEst") brings this suit against its former employees Donald Hiers, Brian Blanchett, and Santiago Ledesma as well as irrigation companies, United Irrigation Supply Inc. ("UIS")[1] and Irrigation Supply USA LLC ("Irrigation Supply"). Before the Court are Defendants' Motions to Dismiss (Docs. 17, 19, 28, 38)[2] and TriEst's Motion for Leave to File Supplemental Amended Complaint (Doc. 58). In conjunction with the Motions to Dismiss, the parties submitted briefs regarding whether res judicata bars any of Plaintiff's claims. (Docs. 55, 56). Defendants contend that TriEst failed to state any claims.

---

[1] Defendant United Irrigation Supply Inc. is two separate entities. One United Irrigation Supply Inc. defendant was incorporated in Georgia, and the other UIS defendant was incorporated in Florida. The Court references the two entities collectively.

[2] Defendants filed motions to dismiss the initial complaint. (Docs. 17, 19). Plaintiff then filed an Amended Complaint, and Defendants subsequently moved to dismiss the Amended Complaint. (Docs. 28, 38).

The Court **GRANTS in part and DENIES in part** Defendants' Motions to Dismiss. The Court **DENIES** TriEst's Motion for Leave to File Supplemental Amended Complaint.

## I.      FACTUAL BACKGROUND

UIS had storefronts in Georgia and Florida where the corporations distributed and serviced irrigation supplies and related equipment. (Doc. 25). Defendant Hiers was a shareholder of UIS, and he served as president of UIS Georgia. In this capacity, Hiers entered into an asset purchase agreement ("APA") with B.B. Hobbs Company, Inc. ("BBHI"). Pursuant to the APA, UIS agreed to sell substantially all its assets to BBHI. Before UIS and BBHI finalized the APA, United Irrigation Supply, LLC ("United Irrigation") was incorporated in Delaware. The APA contemplated BBHI assigning all its rights under the agreement to United Irrigation. The APA took effect on January 2, 2015, with BBHI purchasing substantially all UIS's assets, and United Irrigation owning those assets through its assignment from BBHI.

Hiers agreed to work for United Irrigation following closing of the APA. Hiers entered into an employment agreement and a non-compete agreement with United Irrigation, setting forth the terms of his employment. Defendant Ledesma was an employee of UIS, and following the asset purchase, Ledesma agreed to work for United Irrigation as a branch manager. United Irrigation also employed Defendant

Blanchett as a salesman at the Quitman, Georgia location. Both Blanchett and Ledesma worked closely with Hiers.

In 2016, United Irrigation filed with the Delaware Secretary of State to change its name to TriEst Irrigation, LLC. Consequently, Defendants Hiers, Ledesma, and Blanchett became TriEst employees. While Hiers was employed with TriEst, he often expressed his dissatisfaction with TriEst's management of its business. TriEst alleges that Hiers openly undermined its leadership and sought to rally sales personnel and warehouse staff against TriEst. Rick Johnson, TriEst's Operations Manager, had several meetings with Hiers to address his dissatisfaction with the company. Hiers told Johnson that he intended to defy the non-compete agreement and open a competing irrigation supply store in Valdosta, Georgia.

In February 2017, Hiers ended his employment with TriEst. TriEst alleges that when Hiers left the company, he took boxes of files, which held confidential information regarding TriEst's business. On November 3, 2017, Blanchett and Ledesma ended their employment with TriEst. TriEst alleges that Blanchett and Ledesma also took files holding confidential information regarding TriEst's business. On November 16, 2017, Hiers notified Johnson that he was forming an irrigation supply store with Blanchett and Ledesma. During this call, Hiers offered Johnson employment with his new company.

On November 20, 2017, Blanchett formed Defendant Irrigation Supply in Georgia. TriEst alleges that Irrigation Supply conducts substantially the same business as TriEst; has solicited TriEst's customers; and illegally used TriEst's confidential and propriety information and trade secrets. TriEst alleges that Hiers—acting through Blanchett and Ledesma—initiated and enabled Irrigation Supply by providing financial support to the business. TriEst contends that Hiers' involvement with Irrigation Supply violated the non-compete and employment agreements he entered as part of the APA with United Irrigation.

On December 19, 2017, Hiers filed a declaratory action against TriEst in the Superior Court of Brooks County, Georgia. Hiers sought a judgment declaring the non-compete agreement null and void. He argued that United Irrigation did not merely change its name to TriEst. Rather, he alleged that the two companies merged. According to Hiers, he was bound to a non-compete agreement with United Irrigation—a company that no longer existed following the alleged merger. Therefore, the non-compete agreement also ceased to exist, and TriEst—which was not a party to the contract—could not enforce it against him.

TriEst filed a counterclaim in the Superior Court, seeking, among other things, a judgment that the non-compete agreement was enforceable against Hiers. (Doc. 55-2). TriEst also filed a motion for a temporary restraining order ("TRO") and a petition for injunctive relief to prevent Hiers from violating the non-compete while the Superior Court litigation ensued. (Doc. 55-3).

4

On March 5, 2018, the Superior Court entered a consent judgment granting TriEst's TRO. (Doc. 55-5). The parties agreed to the terms and consented to the Superior Court's order. The consent judgment set forth that the non-compete agreement was valid and enforceable against Hiers. The judgment also declared that individuals employed by Hiers or otherwise participating in his business were restrained from continuing their business in violation of the non-compete agreement.

On May 7, 2018, the Superior Court entered a final consent judgment in favor of TriEst. (Doc. 55-6). The court's order adopted the same terms set forth in the previous consent judgment granting TriEst's TRO. The final order made those terms permanent until January 2, 2020, the date the non-compete agreement expired.

## II.   MOTION TO DISMISS STANDARD

When ruling on a Rule 12(b)(6) motion to dismiss, a court must accept the facts alleged in the plaintiff's complaint as true and construe all reasonable inferences in the light most favorable to the plaintiff. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271,1273 n.1 (11th Cir. 1999); *see* Fed. R. Civ. P. 12(b)(6). To avoid dismissal, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint need not contain detailed factual allegations, but it must provide "more than labels

or conclusions." *Twombly*, 550 U.S. at 554. "Threadbare recitals" of a cause of action's elements, "supported by mere conclusory statements," are insufficient to defeat a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Attached to TriEst's Amended Complaint and Defendants' supplemental briefing to their Motions to Dismiss are several documents, including the Hiers' non-compete agreement, the APA, and the consent judgment entered in the Brooks County Superior Court litigation. A court "generally may not look beyond the pleadings" to consider extrinsic documents when evaluating a motion to dismiss. *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015); *see* Fed. R. Civ. P. 12(d) (When "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment," and the "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). But this Circuit has adopted the "incorporation by reference doctrine," which permits a court to consider a document attached to a pleading without requiring the court to convert the motion to dismiss into one for summary judgment. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368–69 (11th Cir. 1997); *see also SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*,

600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.").

The documents attached to TriEst's Amended Complaint and Defendants' Motions to Dismiss are referenced in the Amended Complaint and are central to TriEst's claims. No party has challenged the authenticity of any document. The Court will consider the documents in connection with Defendants' Motion to Dismiss.

## III.   ANALYSIS

In this case, TriEst alleges several tort and breach of contract claims under state law as well as a federal claim under the Defend Trade Secrets Act. (Doc. 25); 18 U.S.C. § 1836. TriEst's claims rely upon allegations that Defendants impermissibly competed with TriEst's business. Hiers and UIS contend that TriEst's claims either were or should have been adjudicated in the Brooks County Superior Court and thus, are barred by res judicata. The defendants that were not parties to the Superior Court suit argue that TriEst's allegations are insufficient to maintain its claims.

### A. Timeliness of Res Judicata Argument

On December 4, 2018, this Court held a hearing on Defendants' Motion to Set Aside Default and Motion to Dismiss.[3] (Doc. 52). During oral argument, Hiers and UIS argued for the first time that the Brooks County Superior Court judgment precludes the present suit. (Doc. 53). The Court instructed the parties to submit supplemental briefs by January 2, 2019 regarding whether res judicata barred TriEst's claim. (Doc. 54, p. 6). The parties timely filed their briefs. (Docs. 55, 56). TriEst argues that the Court should not consider Hiers and UIS's res judicata argument because they did not raise the issue in their Motion to Dismiss. (Doc. 56, p. 4). Accordingly, TriEst asserts that this argument—first raised during oral argument—comes too late for the Court to consider alongside the Motion to Dismiss. (*Id.*).

Generally, in appellate proceedings a party waives all issues not presented in its briefing. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012); *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1263 (11th Cir. 2004) ("A party is not allowed to raise at oral argument a new issue for review."). This rule "ensures that the opposing party has an opportunity to reflect upon and respond in writing to the arguments that his adversary is raising." *Hamilton*, 680 F.3d at 1319. After Hiers and UIS raised the res judicata issue, the Court permitted

---

[3] The Court granted Defendants' Motion to Set Aside Default and stayed discovery pending a decision on the Motion to Dismiss. (Doc. 54).

the parties nearly a month to "reflect upon and respond in writing" to the argument. *Id.* TriEst had an ample opportunity to contemplate, research, and address the issue. The Court will now consider whether the Superior Court consent judgment has a res judicata effect on the current proceedings, or stated differently, whether the consent judgment bars TriEst's suit or resolves any contested issues in the present suit.

### B. Res Judicata

Res judicata's preclusive effect gives "finality to parties who have already litigated a claim and promot[es] judicial economy." *Eastman Kodak Co. v. Atlanta Retail Inc.*, 456 F.3d 1277, 1284 (11th Cir. 2006). This judicially crafted doctrine bars claims that were previously litigated as well as "claims that could have been litigated." *Id.*; *see Maldonado v. U.S. Att'y Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011) ("It is by now hornbook law that the doctrine of res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding."). When asked to bar a subsequent claim based on a state court judgment, courts apply the law of the state where the prior litigation arose. *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006). The Court applies Georgia law because Hiers brought the prior suit in Brooks County, Georgia Superior Court.

Georgia's res judicata statute provides that "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have

9

been put in issue in the cause wherein the judgment was rendered." O.C.G.A. § 9-12-40. Hiers and UIS contend (1) that claims in TriEst's Amended Complaint were compulsory counterclaims that TriEst was required to raise in the Superior Court action, and (2) that the consent judgment entered by the Superior Court amounts to a final adjudication that precludes TriEst's present claims.

### 1. Compulsory Counterclaims

Res judicata's bar applies to compulsory counterclaims that should have been raised in the prior suit. *See Metro Brokers, Inc. v. Sams & Cole, LLC*, 316 Ga. App. 398, 401 (2012) ("A party may not raise issues arising out of the same transaction which should have been pled as a compulsory counterclaim in another separate suit." (quoting *Tr. Co. Bank of Nw. Ga. v. Shaw*, 182 Ga. App. 165, 166 (1987)). "If the first suit is completed" without filing all compulsory counterclaims, "then res judicata serves to bar proceeding with the second action." *Id.* Thus, if TriEst's present claims were compulsory counterclaims to Hier's prior declaratory action, then the claims must be dismissed.

A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." O.C.G.A. § 9-11-13(a). The "transaction or occurrence" test is "whether a logical relationship exists between the respective claims asserted by the opposing parties." *Metro Brokers, Inc.*, 316 Ga. App. at 400 (quoting *Steve A. Martin Agency, Inc. v. PlantersFIRST Corp.*, 297 Ga. App. 780, 782 (2009)). "A logical relationship arises when (1) the

same aggregate or operative facts serve as the basis for both claims, or (2) the case facts supporting the original claim activate legal rights of the defendant that would otherwise remain dormant." *Steve A. Martin Agency, Inc.*, 297 Ga. App. at 782. The specific "[c]ause of action has no express bearing on the issue." *Metro Brokers, Inc.*, 316 Ga. App. at 401 (quoting *Harbin Lumber Co. v. Fowler*, 137 Ga. App. 90, 93 (1975)).

The Court's analysis focuses on the complaint initiating the prior suit. Hiers' declaratory action concerned the terms and validity of the non-compete agreement. (Doc. 55-1). Specifically, he argued that the scope of the non-compete agreement had impermissibly expanded because of TriEst's alleged merger with UIS. According to Hiers, he had not consented to the agreement as it operated. He entered the non-compete agreement with UIS—not TriEst. Now that TriEst sought to enforce the non-compete agreement, he could not "be expected to understand fully the restrictions being placed upon him." (*Id.* at p. 7). The complaint filed in the Superior Court anticipated that "TriEst will argue that the Agreement should continue to restrict and restrain . . . Hiers from performing services in the irrigation industry that compete with its business." (*Id.*). The issues that the Superior Court litigation presented were the validity of the non-compete agreement and the scope of its restrictions. In other words, Hiers' prior suit sought to challenge whether he was bound to the non-compete agreement and clarify what competitive conduct it prohibited.

11

A logical relationship exists between Hiers' declaratory action and TriEst's present claim for Hiers' breach of the non-compete agreement.[4] In *Myers v. United Servs. Auto. Ass'n*, the Georgia Court of Appeals found that the defendant's prior "declaratory judgment action involved interpretation of the insurance contract," and thus, the plaintiff's subsequent claim for attorney's fees and bad faith damages also "rested on that same contract." 130 Ga. App. 357, 360–61 (1973). The Court of Appeals stated that "without question" the subsequent claims "arose out of the same occurrence or transaction as the suit for declaratory judgment," and "it was incumbent upon [the plaintiff] to file his compulsory counterclaim to the declaratory judgment action." *Id.* at 361; *see also Bigley v. Mosser*, 235 Ga. App. 583, 587 (1998) (discussing *Myers*). Here, like *Myers*, TriEst's breach of contract claim for the non-compete agreement relies upon the exact contract and conduct that was the subject of the prior declaratory judgment action. Therefore, the same facts underpin both claims, and TriEst's subsequent claim for breach of contract is barred by res judicata.

The Court also finds that TriEst's claim for breach of fiduciary duty is barred as a compulsory counterclaim. "To support a claim of breach of fiduciary duty, a

---

[4] Count III of TriEst's Superior Court counterclaim is titled "costs and expenses pursuant to the non-compete agreement." (Doc. 55-2). Within this count, TriEst sought to recover from Hiers "all costs, expenses . . . , losses and damages paid or incurred" as a result of Hiers' breach of the non-compete. (*Id.* at p. 16). Count III is not couched as a breach of contract claim, and the Court will not interpret it as one, though it includes a request for similar relief.

plaintiff must prove the existence of such duty, breach of that duty, and damages proximately caused by the breach." *Wright v. Apartment Inv. & Mgmt. Co.*, 315 Ga. App. 587, 594 (2012). Under Georgia law, an employee breaches his fiduciary duty by "soliticit[ing] customers for a rival business before the end of his employment" or otherwise "act[ing] in direct competition with the employer's business." *White v. Shamrock Bldg. Sys., Inc.*, 294 Ga. App. 340, 346 (2008) (quoting *Instrument Repair Serv., Inc. v. Gunby*, 238 Ga. App. 138, 140 (1999)). The Superior Court action concerned Hiers' relationship with TriEst as an employee—described in the non-compete agreement—and how that relationship restricted his ability to compete with TriEst. TriEst's breach of fiduciary duty claim bears a logical relationship to the declaratory judgment action and thus was a compulsory counterclaim. Res judicata bars TriEst's claim for breach of fiduciary duty.

Finally, TriEst's claims under the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760, *et seq.* and the Defend Trade Secrets Act, 18 U.S.C. § 1836, are also barred as compulsory counterclaims. TriEst's Amended Complaint alleges that the "Defendants have used, and continue to use, [TriEst's] misappropriated Trade Secrets in efforts to improperly compete with [TriEst], contact [TriEst's] customers and/or venders, and divert business . . . away from TriEst." (Doc. 25, pp. 45, 48). The trade secrets listed in the Amended Complaint include TriEst's "information about customers and vendors and prospective customers and vendors . . . product information, cost and pricing information, financial and tax information, projections,

13

and research and development plans." (*Id.* at pp. 44, 47). The Amended Complaint indicates that TriEst made efforts to protect its trade secrets by "requiring Defendant Hiers to execute the Non-Compete Agreement." (*Id.* at pp. 44, 47).

Indeed, the terms of the non-compete agreement exhibit TriEst's intention to protect its trade secrets from Hiers' misuse. Article 2 of the non-compete agreement is titled: "Prohibition on Use of Confidential Information To Compete with Buyer." (Doc. 25-4, p. 2). This provision prohibited Hiers from using TriEst's "confidential and proprietary information," for the "purpose of competing with [TriEst] by selling Irrigation Products." (*Id.*). The non-compete agreement—nearly identical to the Amended Complaint—lists as TriEst's confidential and proprietary information: "customers, prospective customers, products, costs, production techniques, financial and tax information, projections, research and development plans, inventions, trade secrets and know-how." (*Id.*).

The terms of the non-compete agreement encompass Hiers' alleged misappropriation of trade secrets. Hiers initiated the Superior Court suit to adjudicate his obligations under the non-compete agreement, and by the terms of that contract, he was obligated not to reveal confidential and proprietary information. TriEst's trade secrets claims in the present suit bear a logical relationship to the Superior Court case. Counts VI and VII of TriEst's Amended Complaint are barred.

14

TriEst's remaining claims were not compulsory counterclaims in the Superior Court action. Counts I and II of TriEst's Amended Complaint allege Hiers breached the APA and his employment agreement. (*Id.* at pp. 20–31). These claims bear no logical relationship to Hiers' prior suit. The APA is neither referenced nor at issue in Hiers' complaint filed in the Superior Court. The employment agreement was mentioned in one sentence of the facts section to show that TriEst employed Hiers. The employment agreement did not underpin Hiers' claim. These contracts and Hiers' potential breach of their terms were not at issue in the prior suit, thus the operative facts necessary to state a claim for breach of those contracts did not arise.

TriEst's claim for fraud also was not a compulsory counterclaim. TriEst's fraud claim relies on Hiers' representations made in the APA, the employment agreement, and the non-compete agreement. Again, because the Brooks County case concerned only the non-compete agreement, TriEst's subsequent fraud claim does not have a logical relationship to Hiers' prior declaratory judgment action. Although Hiers' conduct may be the same in both suits, the terms of the employment agreement and the APA were not at issue.

Finally, TriEst's tortious interference with business and/or contractual relations claims are not barred as compulsory counterclaims.[5] (Doc. 25, pp. 49,

---

[5] Count VIII of TriEst's Amended Complaint is tortious interference with business and/or contractual relations. (Doc. 25, p. 49). Count IX is tortious interference with

52). Under Georgia law, tortious interference requires, among other elements, a showing that "the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with plaintiff." *Slosberg v. Giller*, 341 Ga. App. 581, 584 (2017) (quoting *Tribeca Homes, LLC v. Marathon Inv. Corp.*, 322 Ga. App. 596, 598 (2013)). To succeed on its tortious interference claims, TriEst will have to present evidence of transactions or other business relationships between it and its clients. TriEst's Amended Complaint alleges that Hiers had knowledge of its "valid business and/or contractual relationships with its customers and vendors." (Doc. 25, p. 49). And Hiers interfered, for example, by "resisting or otherwise refusing to send customer designs to [TriEst's] design department." (*Id.* at p. 50). Such contracts with TriEst's customers were not at issue in the Superior Court action, and accordingly, the same operative facts were not present to create a logical relationship between the two cases.

### 2.  Res Judicata Elements

The Court next considers whether general res judicata principles bar TriEst's remaining claims. Three elements must be satisfied before applying res judicata's preclusive effect: (1) identity of the cause of action; (2) identity of the parties or their privies; and (3) a previous adjudication on the merits by a court of competent

---

prospective business and/or contractual relations. (*Id.* at p. 52). The allegations contained in these claims are nearly identical.

jurisdiction. *Bostick v. CMM Props., Inc.*, 297 Ga. 55, 57 (2015); *see* O.C.G.A. § 9-12-40. The Court's compulsory counterclaim analysis considered only Hiers' complaint in the Superior Court action. At this stage of the analysis, the Court considers the Superior Court litigation as a whole, including both Hiers' complaint and TriEst's counterclaims.

### a. Identity of the Cause of Action

The first prerequisite, "cause of action" is defined as being the "entire set of facts which give rise to an enforceable claim." *Coen v. CDC Software Corp.*, 304 Ga. 105, 110 (2018). In instances where, "the subject matter [is] the same" and "the causes of action arose out of the same transaction," but "the operative facts necessary to the causes of action are different in the two cases"—the subsequent suit is not barred. *Id.* In other words, "the operative facts required to state a viable claim" for the first cause of action must "encompass the entire set of operative facts required to state a claim" for the second suit. *Id.* at 112.

The Superior Court consent judgment resolved not only Hiers' declaratory action, but it also resolved TriEst's state law counterclaims. TriEst's counterclaim raised three counts against Hiers. Count I sought a declaration that the non-compete agreement was enforceable against Hiers. (Doc. 55-2, p. 13). Count II requested injunctive relief, requiring Hiers to cease all business operations that breached the non-compete agreement. Count III sought to recover from Defendant

Hiers "all costs, expenses . . . , losses and damages paid or incurred" as a result of Hiers' breach of the non-compete agreement. (*Id.* at p. 16).

In this case, TriEst's remaining claims allege that Hiers breached the APA and his employment agreement, committed fraud, and illegally interfered with TriEst's business. (Doc. 25). As discussed above, Hiers' complaint did not invoke all the operative facts necessary to establish these claims. TriEst's counterclaims did not sufficiently broaden the scope of the Superior Court action to include the operative facts necessary to prove TriEst's claims in this Court. Thus, the Brooks County case did not "encompass the entire set of operative facts" upon which TriEst's claims for breach of the APA and employment agreement, fraud, and tortious interference with business rest. *Coen*, 304 Ga. at 110. Res judicata will not bar these claims.

b.  Identity of the Parties or their Privies

Although Hiers' res judicata defense fails on the first element, the Court notes that the second prerequisite, identity of the parties, prevents application of res judicata's bar against the other defendants in this case as well. Identity of the parties requires "the alignment of the parties as adversaries [to] be the same in both suits." *Bostick*, 297 Ga. at 57. Hiers initiated suit against TriEst in the Superior Court action. TriEst brought counterclaims against Hiers and Brent Brinkley. In federal court, TriEst filed suit against Hiers, Blanchett, Ledesma, UIS, and Irrigation Supply. Identity of the parties exists between TriEst and Hiers because

18

they were adversaries in both suits. Res judicata does not preclude claims against the other defendants named in this federal action because they were not parties in the Superior Court litigation. Therefore, all TriEst's claims against Blanchett, Ledesma, UIS, and Irrigation Supply survive res judicata's bar.

### c. Declaratory Judgment Exception

TriEst argues that an exception to res judicata for declaratory actions applies and prevents the exclusion of its claims. (Doc. 56, pp. 6–8). The exception recognizes that "ordinary principles of res judicata cannot be applied automatically to prior declaratory judgment actions." *Empire Fire & Marine Ins. Co. v. J. Transp., Inc.*, 880 F.2d 1291, 1294 (11th Cir. 1989) (citing *Kasper Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530 (5th Cir. 1978)). The cases applying this exception, however, rely on federal principles of res judicata.[6] This Court applies Georgia's res judicata law because a Georgia superior court action is the basis for Hiers' res judicata defense. TriEst acknowledges that Georgia law has not adopted such an exception to its res judicata law.[7] Furthermore, TriEst does not explain how this exception might apply when the subsequent suit is based, in part, on what were compulsory counterclaims. The Court will not apply this exception.

---

[6] In *Empire Fire*, the District Court and Eleventh Circuit applied federal res judicata law because the party asserting res judicata relied upon a prior diversity action arising out of the U.S. District Court for the District of Kentucky. *See Empire Fire*, 880 F.2d at 1292, 1293 n.2.

[7] TriEst's brief admits that "Georgia state courts do not appear to have addressed this rule." (Doc. 56, p. 7).

### C. Motion to Dismiss – Defendants Hiers and UIS (Doc. 28).

Having considered Hiers and UIS's res judicata arguments, the Court now turns to the remainder of their Motion to Dismiss.

#### 1. Shotgun Pleading

Hiers and UIS claim that the Amended Complaint is a shotgun pleading. Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Shotgun pleadings violate Rule 8 . . . by failing to one degree or another to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294–95 (11th Cir. 2018) (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015)). The Eleventh Circuit has identified four types of shotgun pleadings. *Weiland*, 792 F.3d at 1321. First, "the most common type" of shotgun pleading "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts." *Id.* Next, is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Third is a complaint that fails to "separat[e] into a different count each cause of action or claim for relief." *Id.* at 1323. Finally, the fourth type occurs where the complaint includes "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Id.*

20

Hiers and UIS contend the Amended Complaint is too vague and does not adequately separate the defendants within each count. The Amended Complaint is not meticulously specific, but this is not "a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). Furthermore, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1324. Defendants have fair notice of TriEst's claims as well as the factual allegations supporting its claims. All Defendants filed Motions to Dismiss addressing each count, and they competently argued why they believed TriEst failed to state its claims. The Court concludes the Amended Complaint is not a shotgun pleading.

2.  Breach of the APA

Count I of the Amended Complaint alleges that Hiers and UIS breached the APA. Hiers contends that TriEst cannot maintain a claim for breach of the APA because he was not a party to the contract in his personal capacity. Hiers executed the APA in his capacity as president of UIS, and thus according to Hiers, he was not personally bound to its restrictions. The Court agrees.

An individual cannot be held personally liable for corporate acts when acting only in his capacity as a corporate officer. *See Nw. Preferred, Ltd. v. Williams*, 184

21

Ga. App. 145, 147 (1987). "Under Georgia law, a corporation and its shareholders and officers are separate." *United States v. Fid. Cap. Corp.*, 920 F.2d 827, 836 (11th Cir. 1991). "[T]he owner [of the corporation] is not bound by corporate acts, even though the individual may dictate every corporate decision." *Id.* The Amended Complaint is explicit that, "Defendant Hiers, in his authorized capacity as President of [UIS] . . . executed and entered Defendant [UIS] into . . . [the] Asset Purchase Agreement." (Doc. 25, p. 6). Signing the APA as UIS's president cannot establish Hiers' personal liability for an alleged breach.

TriEst points to obligations referenced within the APA that Hiers assumed in his personal capacity—particularly the employment agreement and the non-compete agreement. "[A] corporate officer who does personally guarantee an obligation may be personally liable for the performance of *that* particular obligation, but such a personal guarantee does not render him personally liable on *any and all* corporate obligations." *Hester Enters., Inc. v. Narvais*, 198 Ga. App. 580, 581 (1991) (emphasis original). The employment and non-compete agreements create personal obligations separate from the APA. Allegations that Hiers personally assumed liability under the employment and non-compete agreements do not support liability for his corporate acts on other contracts. TriEst has failed to state a claim against Hiers for breach of the APA.

The Amended Complaint does, however, state a claim against UIS. The Amended Complaint quotes portions of the APA, stating UIS's obligations under

22

the contract. Then, the Amended Complaint alleges how UIS violated those obligations and claims damages. Count I may proceed against UIS.

### 3.  Breach of the Employment Agreement

Count II of the Amended Complaint alleges that Hiers breached his employment agreement. Hiers argues primarily that this claim should be dismissed for a lack of clarity or specificity. The Court concludes that the Amended Complaint is sufficient to defeat Hiers' arguments. The Amended Complaint quotes portions of the employment agreement, pointing to Hiers' obligations under the contract. Then, the Amended Complaint alleges how Hiers violated those obligations and claims damages. TriEst has stated a breach of contract claim against Hiers for breach of the employment agreement.

### 4.  Fraud

Count IV of the Amended Complaint alleges that Hiers and UIS made fraudulent representations when entering the APA, the employment agreement, and the non-compete agreement. (Doc. 25). Hiers and UIS argue that Count IV violates the heightened pleading standard required for fraud claims. Under Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff must "state with particularity the circumstances constituting fraud." Plaintiffs satisfy Rule 9(b) by alleging:

> (1) precisely what statements were made in what documents or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) each statement; (3) the content of such statements and

23

the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.

*Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1159 (11th Cir. 2019) (quotation marks omitted) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). The Amended Complaint identifies statements in the APA, the employment agreement, and the non-compete agreement that Triest alleges were fraudulent. The Amended Complaint, however, does not specify why these statements are fraudulent, or how the statements misled TriEst. TriEst alleges that it relied upon these statements when deciding to enter contracts with Hiers and UIS, but TriEst does not allege how those specific statements later harmed the company. Rule 9(b) requires more than conclusory allegations, labeling conduct as fraudulent, and the Amended Complaint does not satisfy the rule.

When a complaint violates Rule 9(b), the plaintiff "is entitled to one chance to amend the complaint and bring it into compliance with the rule." *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 568–69 (11th Cir. 1994). "Thus, because this is the first opportunity the Court has had to review [TriEst's] pleadings under Rule 9(b) scrutiny, its failure to satisfy the rule doesn't end its claim." *VC Macon, GA LLC v. Va. Coll. LLC*, No. 5:18-cv-00388, 2020 WL 5079165, at *6 (M.D. Ga. Aug. 27, 2020). The Court will permit TriEst to replead its fraud claim to comply with Rule 9(b).

24

### 5. Tortious Interference

Counts VIII and IX allege tortious interference with business and/or contractual relationships as well as prospective business and/or contractual relationships. TriEst identifies several contracts/business relationships in its Amended Complaint, including: (1) employment contracts; (2) customer contracts; (3) vendor contracts. (Doc. 25, pp. 49–50). The elements of tortious interference with contractual relations, business relations, or potential business relations are:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Tribeca Homes, LLC v. Marathon Inv. Corp*, 322 Ga. App. 596, 598–599 (2013). Hiers argues that the Amended Complaint fails on the first element. Acting "without privilege" means that "the defendant was an intermeddler or 'stranger' to the business relationship at issue." *ASC Constr. Equip. USA, Inc. v. City Com. Real Est., Inc.*, 303 Ga. App. 309, 313 (2010). A defendant is not a stranger to the contract just because he is not a party to the contract. *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 608 (1998). Rather, the defendant "must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract." *Id*. at 609. If an individual has an economic interest in the contract or business relationship, then he is not a stranger—regardless of

25

whether the parties to the relationship intended the defendant to be a third-party beneficiary. *Id.*; *Disaster Servs., Inc. v. ERC P'ship*, 228 Ga. App. 739, 741 (1997) ("Where appropriate circumstances appear from the evidence that a defendant had a legitimate interest in either the contract or a party to the contract, the defendant is not a stranger to the contract . . . .").

Hiers argues that he was not a stranger to TriEst's contracts or business relationships because he was a TriEst employee, and the APA gave him an economic interest in TriEst's business. Under Georgia law, "[r]egardless of whether an employee is acting as an agent of his employer when engaging in the interference, he is not a stranger to the business relationship between his employer and the customers he *personally* services." *Tom's Amusement Co. v. Total Vending Servs.*, 243 Ga. App. 294, 296 (2000) (emphasis added). This applies even when a former employee solicits those clients for his *new* employer so long as the employee "had developed relationships with those clients when he worked for his previous employer." *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1343–44 (11th Cir. 2017) (discussing *Tom's Amusement Co.*, 243 Ga. App. at 296–97).

TriEst alleges that Hiers regularly dealt with its clients and vendors during his employment. Neither the Amended Complaint nor the Motion to Dismiss clearly identify or distinguish the contractual/business relationships that occurred during Hiers' employment. Thus, it is plausible that Hiers did not personally service or maintain relationships with the customers and vendors with which he allegedly

26

interfered. *See U.S. Sec. Assocs., Inc. v. Lumby*, No. 1:18-CV-5331-TWT, 2019 WL 8277263, at *9 (N.D. Ga. Sept. 25, 2019) (denying motion to dismiss on tortious interference claim where "the identities of the Plaintiff's former customers are unknown from the face of the Complaint"). The facts of this case are not sufficiently developed to discern whether Hiers was a stranger to these contracts/business relationships.

Additionally, the Amended Complaint as alleged makes it plausible that Hiers was not a third-party beneficiary to TriEst's contracts and business relationships. Hiers points to the APA's earn out provision to show that he had an economic interest in TriEst's business. The APA's earn out provision, however, pays UIS—not Hiers—based on TriEst's performance. (Doc. 25-1, pp. 1, 3–4). Hiers likely has a financial stake in UIS as its president. But Georgia law "make[s] clear that to qualify as an unintended third-party beneficiary" and thus achieve stranger-status, "a party must have a *direct* economic interest in the subject of the specific contract at issue." *Howerton v. Harbin Clinic, LLC*, 333 Ga. App. 191, 198 (2015) (emphasis original). At this stage of the litigation, it is plausible that whatever economic interest Hiers may have had in TriEst's relationships was indirect. The Court will permit TriEst's claims to proceed.[8]

---

[8] Hiers' Motion to Dismiss concerns only interference with TriEst's customers/business relationships. The Amended Complaint also appears to allege interference with TriEst's employment contracts. Hiers' motion does not address

TriEst alleges the existence of its various business and employment contracts, and it alleges conduct that would satisfy the elements of tortious interference, generally. Sufficient allegations are present to state a tortious interference claim. The Amended Complaint does not specifically identify the contracts by the names of the parties to those contracts. Nor does the Amended Complaint distinguish between the defendants alleged to have interfered. Count VIII of the Amended Complaint lists four different defendants, but it does not specify which defendants interfered in particular contracts. Counts VIII and IX survive the motion to dismiss; however, Plaintiff will be required to show specific evidence at the summary judgment stage.

### D. Motion to Dismiss – Defendants Irrigation Supply, Blanchett, and Ledesma (Docs. 18, 38).

#### 1. Breach of Fiduciary Duty

Count V of TriEst's Amended Complaint alleges that Defendants Blanchett and Ledesma breached the fiduciary duty they owed to TriEst as its employees. TriEst has failed to allege facts showing breach. Under Georgia law, an employee in a fiduciary relationship is prohibited from "soliticit[ing] customers for a rival business before the end of his employment" and "do[ing] other similar acts in direct competition with the employer's business." *White*, 294 Ga. App. at 346 (quoting

---

interference as to the employment contracts, and thus, the Court will permit such a claim to proceed.

*Gunby*, 238 Ga. App. at 140). An employee can, however, "mak[e] plans, while he is still employed, to enter a competing business at a future time." *Sitton v. Print Direction, Inc.*, 312 Ga. App. 365, 372 (2011); *see White*, 294 Ga. App. at 346 ("[A]n employee breaches no fiduciary duty to the employer simply by making plans to enter a competing business while he is still employed . . . ." (quoting *Gunby*, 238 Ga. App. at 140)).

The Amended Complaint alleges that while employed by TriEst, Hiers met with Blanchett and other TriEst personnel at TriEst's Quitman location and stated that if the employees were "unhappy with [TriEst's] operations, Defendant Hiers would provide money so Defendant Blanchett . . . could start a competing irrigation business." (Doc. 25, p. 11). This allegation amounts to planning a competing business; it is not competition. Thus, this allegation cannot support a claim for breach of fiduciary duty. TriEst also alleges that Blanchett and Ledesma removed TriEst's confidential and proprietary information when they terminated their employment. While such acts were likely imprudent, these allegations are not competition. TriEst's allegation that Blanchett resisted or otherwise refused "to send customer designs to [TriEst's] design department in South Carolina and, rather, insist[ed] on doing such designs by hand and keeping them . . . in Quitman," suggests only that Blanchett disobeyed an order from TriEst or opposed company policy. A disobedient employee is not necessarily competing with his employer.

TriEst does not allege that Blanchett or Ledesma actually competed with TriEst or otherwise profited from TriEst's business to its detriment. *See Wright*, 315 Ga. App. at 594 ("When a fiduciary relationship exists, the agent may not make a profit for himself out of the relationship to the injury of the principal."). The Court concludes that TriEst failed to state a claim for breach of fiduciary duty against Defendants Blanchett and Ledesma.

### 2. Trade Secrets

Next, Defendants Blanchett, Ledesma, and Irrigation Supply argue that TriEst failed to state a claim under the Georgia Trade Secrets Act ("GTSA"), O.C.G.A. § 10-1-760, and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. "[T]he analysis of these claims substantially overlaps," and thus courts "address them simultaneously." *One Sixty Over Ninety, LLC v. Ologie, LLC*, No. 3:17-CV-147 (CDL), 2019 WL 11608032, at *3–4 (M.D. Ga. Sept. 6, 2019). Both statutes allow plaintiffs to recover damages for misappropriation of trade secrets. *See* O.C.G.A. § 10-1-763(a); 18 U.S.C. § 1836(b)(3)(B). "The DTSA requires the same showing [as the GTSA], but with the additional requirement that the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." *Argos USA LLC v. Young*, No. 1:18-CV-02797-ELR, 2019 WL 4125968, at *5 (N.D. Ga. June 28, 2019) (quotation marks and citation omitted).

To establish that information qualifies as a trade secret under the GTSA and DTSA, TriEst must allege that it took reasonable efforts under the circumstances to protect the secrecy of the information. O.C.G.A. § 10-1-761(4)(B); 18 U.S.C. § 1839(3)(A). Blanchett, Ledesma, and Irrigation Supply argue that TriEst failed to allege that the company took steps to protect the information from disclosure, and thus as alleged, the information does not qualify as trade secrets. In response, TriEst points only to Hiers' non-compete agreement. TriEst does not allege that Blanchett or Ledesma ever received notice that such information was confidential, or that TriEst required them to sign non-disclosure agreements or employment contracts that treat the information as trade secrets. *See Bacon v. Volvo Serv. Ctr., Inc.*, 266 Ga. App. 543, 545 (2004) (concluding that company did not take reasonable steps to protect information where "[e]mployees were not informed that the information was confidential," and "[n]either [defendant-employee] was required to sign a confidentiality agreement as part of his employment"); *Am. Bldgs. Co. v. Pascoe Bldg. Sys., Inc.*, 260 Ga. 346, 349 (1990) ("Even in the absence of an express agreement, it is an implied term of an employment contract that an employee will not divulge a trade secret . . . ."). No allegation states that TriEst had a general confidentiality policy for its employees. And even so, the Georgia Court of Appeals has cast doubt on confidentiality agreements as the exclusive measure taken to maintain secrecy. *See Equifax Servs., Inc. v. Examination Mgmt. Servs., Inc.*, 216 Ga. App. 35, 40 (1994) ("[W]e cannot ignore

31

the fact that . . . [the plaintiff] relies on the agreement exclusively to establish that reasonable steps were taken to maintain the secrecy it desires."); *see also Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1334 (N.D. Ga. 2007) ("[R]equiring all employees to sign generalized confidentiality agreements is generally not, standing alone, sufficient to demonstrate reasonable efforts." (citing *Equifax Servs., Inc.*, 216 Ga. App. at 40)).

TriEst does not argue that it took reasonable steps to protect information in Blanchett or Ledesma's possession. Alleging that merely one employee signed an agreement with non-disclosure provisions is insufficient to state a claim under the GTSA and DTSA against other individuals or Irrigation Supply. Counts VI and VII are dismissed.

### 3.  Tortious Interference with Business and Contractual Relations

Counts VIII and IX of the Amended Complaint allege tortious interference with contractual/business relationships as well as prospective contractual/business relationships against Defendants Ledesma, Blanchett, and Irrigation Supply. (Doc. 25, pp. 51, 52). As discussed above, tortious interference claims require that the defendant "must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract." *McLane*, 269 Ga. at 609. Ledesma and Blanchett argue that their employment with TriEst precludes a tortious interference claim because they were not strangers to the contracts/business relationships at issue.

TriEst alleges that Ledesma and Blanchett, like Hiers, regularly dealt with its clients and vendors during their employment. Neither the Amended Complaint nor the Motion to Dismiss clearly identify or distinguish the contractual/business relationships that occurred during their employment. Thus, it is plausible that Ledesma and Blanchett did not personally service or maintain relationships with the customers and vendors with which they allegedly interfered. *See Tom's Amusement Co.*, 243 Ga. App. at 296 ("[A]n employee . . . is not a stranger to the business relationship between his employer and the customers he *personally* services." (emphasis added)); *Lumby*, 2019 WL 8277263, at *9 (denying motion to dismiss on tortious interference claim where "the identities of the Plaintiff's former customers are unknown from the face of the Complaint"). The facts of this case are not sufficiently developed to discern whether Ledesma and Blanchett were strangers to these contracts/business relationships. The Court will permit TriEst's claims to proceed against Ledesma and Blanchett at this stage of the litigation.

None of the allegations in Counts VIII and IX refer to Irrigation Supply. The Amended Complaint does not allege conduct by Irrigation Supply amounting to tortious interference. Counts VIII and IX are dismissed as to Irrigation Supply.

### E. Conspiracy and Aiding and Abetting

Counts X and XI allege conspiracy and aiding and abetting against all defendants. No separate, independent cause of action exists for conspiracy. *See, e.g.*, *R.W. Holdco, Inc. v. Johnson*, 267 Ga. App. 859, 867–68 (2004) ("Where civil

liability for a conspiracy is sought to be imposed, the conspiracy . . . furnishes no cause of action." (citation omitted)). The plaintiff must identify an underlying tort. *See McIntee v. Deramus*, 313 Ga. App. 653, 656 (2012) ("[A] plaintiff must show that two or more persons combined either to do some act which is a tort, or else to do some lawful act by methods which constitute tort." (quotation marks and citation omitted)). Similarly, aiding and abetting is recognized in conjunction with other tort or breach of contract claims. *See Am. Mgmt. Servs. E., LLC v. Fort Benning Fam. Cmty., LLC*, 333 Ga. App. 664, 688 (2015) ("Georgia law recognizes a claim for aiding and abetting a breach of fiduciary duty."); *cf. Siavage v. Gandy*, 350 Ga. App. 562, 566 (2019) ("[T]he tort of 'aiding and abetting fraud' does not exist as a basis for liability under Georgia law."). Counts XI and XII include a laundry list of factual allegations pointing to the Defendants' conduct. But the Amended Complaint does not identify an underlying tort from which to establish liability.

The Amended Complain puts Defendants on notice that TriEst alleges they were joint tortfeasors, acting in concert. The Court will permit TriEst to amend Counts X and XI to specify which Defendants conspired or aided and abetted to commit a specific tort.

### F.  Motion to Amend

TriEst seeks to supplement its Amended Complaint with new factual allegations. (Doc. 58). Under Rule 15(d) of the Federal Rules of Civil Procedure, the court may "permit a party to serve a supplemental pleading setting out any new

transaction, occurrence, or event that happened after the date of the pleading to be supplemented." TriEst seeks to add allegations concerning the following: (1) Hiers' construction of a commercial building on his land while the non-compete agreement was in effect; (2) after the non-compete agreement expired, Hiers' creation of the company, The Irrigation Store, Inc.; and (3) Ledesma and Blanchett ceasing operations of Irrigation Supply to work with Hiers at The Irrigation Store.

TriEst contends that the proposed additional facts will "substantiate" its claims that "the Defendants have engaged in a coordinated effort to directly compete against [TriEst] in the same geographic region." (Doc. 58-2, p. 4). Defendants oppose the proposed addition of these facts as "futile." According to Defendants even with these supplemental allegations, TriEst fails to state a claim against them. The Court agrees that these allegations will not mend TriEst's claims that the Court has determined are deficient. Claims alleging Hiers breached the non-compete agreement and his fiduciary duty are barred by res judicata. New factual allegations cannot repair TriEst's failure to pursue those counterclaims in the Brooks County Superior Court. Furthermore, several of the proposed supplemental allegations concern conduct that occurred *after* the non-compete agreement expired—when Defendants were permitted to compete with TriEst's business. Finally, constructing a commercial building amounts to planning to compete, and as discussed above, merely planning to compete is not tortious. The

Court will not permit TriEst to supplement its Amended Complaint with these new allegations.

## IV.    CONCLUSION

The Court **GRANTS in part and DENIES in part** Defendants' Motions to Dismiss. (Docs. 17, 19, 28, 38). The Court dismisses Counts III, V, VI, VII. Count I is dismissed as to Defendant Hiers, but the claim may proceed against UIS. Counts VIII and IX are dismissed against Defendant Irrigation Supply. These claims may proceed against Defendants Hiers, Blanchett, and Ledesma. The Court permits TriEst to amend its Complaint to address Counts IV, X, and XI as outlined herein. TriEst shall file its Second Amended Complaint not later than Friday, July 2, 2021.

**SO ORDERED**, this 2nd day of June, 2021.

_s/ Hugh Lawson_____
**HUGH LAWSON, SENIOR JUDGE**

kac