**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

**TRIEST IRRIGATION, LLC, f/k/a UNITED IRRIGATION SUPPLY, INC.**,

     Plaintiff,

v.

**DONALD VANCE HIERS, SR., et al.,**

     Defendants.

Civil Action No. 7:18-CV-155 (HL)

**ORDER**

This case arises out of an alleged breach of a contract for the sale of an irrigation supply and equipment distribution and servicing company and from purported violations of a related employment agreement. Plaintiff TriEst Irrigation, LLC, f/k/a United Irrigation Supply, Inc. asserts substantive claims for breach of contract, breach of the employment agreement, fraud, tortious interference with current and prospective business relations, conspiracy, and aiding and abetting. Before the Court is Defendant Irrigation Supply USA, LLC's Motion to Dismiss. (Doc. 70). Also before the Court is Defendants Donald Vance Hiers, Sr., United Irrigation Supply, Inc. of Georgia, and United Irrigation Supply Inc. of Florida's Motion to Dismiss Plaintiff's Tort and Equitable Relief Claims of Second Amended Complaint. (Doc. 71).

The parties appeared before the Court for a hearing on these motions on November 29, 2021. Upon consideration of the Second Amended Complaint and

the arguments of the parties, the Court **GRANTS in part** and **DENIES in part** Defendants' motions to dismiss.

## I.    BACKGROUND

### ***The Parties***

Plaintiff TRIEST IRRIGATION, LLC ("TriEst") is a limited liability company organized under the laws of the State of Delaware. (Doc. 67, ¶ 1). TriEst was previously known as UNITED IRRIGATION SUPPLY, LLC ("UIS, LLC"). (Id. at ¶ 24). UIS, LLC was formed on December 18, 2014, specifically to purchase the assets listed in the Asset Purchase Agreement ("APA") at the heart of the present litigation. (Id.). UIS, LLC filed a Certificate of Amendment to the Certificate of Formation with the Delaware Secretary of State on January 19, 2016, thereby changing the name of UIS, LLC to TriEst. (Id. at ¶ 44). The Georgia Secretary of State issued an Amended Certificate of Authority changing the name of UIS, LLC to TriESt on February 2, 2016. (Id. at ¶ 45).

There are two Defendants known as UNITED IRRIGATION SUPPLY, INC. ("UIS, Inc."). UIS Georgia, Inc. was formed under the laws of the State of Georgia and had its principal place of business in Quitman, Georgia. (Id. at ¶ 4). UIS Florida, Inc. was formed under the laws of the State of Florida and had its principal place of business in Arcadia, Florida. (Id. at ¶ 6). UIS Georgia, Inc. and UIS Florida, Inc. owned the assets listed in the APA. (Id. at ¶ 19). Both

2

corporations have been administratively dissolved.[1] (Id. at ¶¶ 4, 6). Plaintiff refers to UIS Georgia, Inc. and UIS Florida, Inc. collectively at "Defendants UIS, Inc." or "UIS, Inc." throughout the Second Amended Complaint. (Id. at ¶ 18).

Defendant DONALD VANCE HIERS, SR. ("Hiers") was one of two shareholders and a key employee of UIS Georgia, Inc. and UIS Florida, Inc. (Id. at ¶ 18). Hiers, in his capacity as President of UIS Georgia, Inc., and Brent Brinkley, in his capacity as Secretary of UIS Florida, Inc., authorized the sale of substantially all the assets of UIS, Inc. through the APA. (Id. at ¶ 19). Hiers then entered into an Employment Agreement with Plaintiff. (Id. at ¶ 28). By virtue of his position, Hiers maintained possession, or otherwise had access to, Plaintiff's confidential and proprietary information, including information about Plaintiff's customers and prospective customers, products, costs, financial information, projections, and trade secrets. (Id. at ¶ 41).

Defendant BRIAN HARMON BLANCHETT ("Blanchett") worked for the UIS, Inc. Defendants. (Id. at ¶ 37). Following closing on the APA, Blanchett began working for Plaintiff. (Id. at ¶ 38). Plaintiff employed Blanchett as a branch manager. (Id.). Blanchett worked closely with Hiers. (Id. at ¶ 40). And, like Hiers,

---

[1] During the November 29, 2021 hearing, the Court questioned Plaintiff's counsel about what relief Plaintiff hoped to obtain from the two dissolved corporations. (Doc. 81, p. 10-13). Counsel admitted it is unclear what role the defunct companies will play as litigation progresses. (Id. at p. 11). Plaintiff named the UIS, Inc. Defendants based on their role in the APA. (Id.). To complicate matters further, the UIS, Inc. Defendants filed a counterclaim against Plaintiff. (Doc. 62, p. 27-33); Doc. 81, p. 12-13).

Blanchett had access to Plaintiff's proprietary and confidential information. (Id. at ¶ 42).

Plaintiff employed Defendant SANTIAGO LEDESMA, III, a/k/a DIEGO LEDESMA ("Ledesma") as a salesman at Plaintiff's Quitman, Georgia location.[2] (Id. at ¶ 39). Ledesma worked directly under Hiers. (Id.). Plaintiff alleges that Ledesma also had access to Plaintiff's proprietary and confidential information. (Id. at ¶ 43).

Defendant IRRIGATION SUPPLY USA, LLC ("Irrigation Supply") was formed by Blanchett and Ledesma under the laws of the State of Georgia on November 20, 2017. (Id. at ¶ 62). Plaintiff alleges Irrigation Supply conducts substantially the same business operations as Plaintiff and directly competes with Plaintiff in the same geographic area. (Id. at ¶ 64).

### Asset Purchase Agreement

On November 18, 2014, the UIS, Inc. Defendants entered into an APA with B.B. Hobbs Company, Inc. ("BBHI") for the sale of substantially all the assets of both UIS, Inc. entities. (Id. at ¶ 19). The APA contained an acknowledgment of BBHI's intention to assign its rights and obligations under the APA to an affiliate buyer prior to the January 2, 2015 anticipated closing date. (Id. at ¶ 21). Plaintiff's

---

[2] It is not clear whether Ledesma worked for the UIS, Inc. Defendants. At the hearing, the attorneys were not able to resolve the matter of Ledesma's prior employment with any certainty and confused the roles of Ledesma and Blanchett. (Doc. 81, p. 10). There is no dispute, however, that both gentlemen worked closely with Hiers during their employment with Plaintiff. (Id.).

4

corporate entity was formed on December 18, 2014. (Id. at ¶ 24). Upon the closing of the APA, BBHI assigned its ownership of the UIS, Inc. assets to Plaintiff. (Id. at ¶ 25). Plaintiff thereafter assumed the operation of the irrigation supply business.

### ***Non-Compete Agreement***

In connection with the APA, Defendant Hiers entered into an Employment Agreement with Plaintiff. (Id. at ¶ 28). The Employment Agreement contained an agreement not to compete ("Non-Compete Agreement"). (Id. at ¶ 30). The Non-Compete Agreement defined a "Covenant Period," during which Hiers agreed not to engage in competing business activities for the latter of (a) five years from the January 2, 2015 closing of the APA; or (b) two years from the termination of Hiers' employment with Plaintiff. (Id. at ¶ 32, 34-36).

Plaintiff alleges that throughout 2016 and 2017, Hiers regularly expressed his dissatisfaction with Plaintiff's business operations and management and openly undermined Plaintiff's President in front of other employees. (Id. at ¶ 47). Plaintiff alleges Hiers rallied sales and warehouse personnel, including Defendants Blanchett and Ledesma, against Plaintiff. (Id. at ¶ 48). According to Plaintiff, in December 2016, Hiers organized a meeting at Plaintiff's Quitman location. (Id. at ¶ 49). Hiers announced that if any staff members were unhappy with their employment, he would provide financing for them to start a competing irrigation business. (Id.). Plaintiff also alleges that in December 2016 Hiers

claimed he could reacquire the business from Plaintiff for "pennies on the dollar." (Id. at ¶ 51).

Plaintiff claims Hiers continued disparaging Plaintiff's business operations in January 2017. Plaintiff's Operations Manager visited the Quitman location in January 2017. (Id. at ¶ 53). During a meeting with the Operations Manager, Hiers appeared disgruntled and voiced his discontent with Plaintiff and its management of the business. (Id.). Plaintiff claims Hiers stated that his "attorney said the non-compete isn't worth the paper it's written on" and suggested that the solution was to "screw the non-compete and open a store in Valdosta," or directly across the street in Quitman. (Id.). At the conclusion of the meeting, Hiers threatened, "if things don't change, you might just see me selling irrigation again before you realize it." (Id.).

Hiers left Plaintiff's employ in February 2017. (Id. at ¶ 54). Plaintiff alleges that prior to Hiers' separation, Hiers removed boxes of files from the Quitman office. (Id. at ¶ 55). The boxes purportedly contained confidential and proprietary information, including accounts receivable and payable for the UIS, Inc. entities from 2013 and 2014. (Id.). Defendants Blanchett and Ledesma left Plaintiff's employment on November 2, 2017. (Id. at ¶¶ 57-58). Plaintiff posits Blanchett and Ledesma also absconded with confidential files. (Id. at ¶ 59).

On November 16, 2017, Hiers informed Plaintiff's Operations Manager that Blanchett and Ledesma were forming a new irrigation company. (Id. at ¶ 60).

According to Plaintiff, Hiers told the Operations Manager that "if you . . . feel like you need a change . . . you could come work for me." (Id.). Blanchett filed Articles of Organization for Defendant Irrigation Supply with the Georgia Secretary of State on November 20, 2017. (Id. at ¶ 62). Irrigation Supply is located in Valdosta, Georgia, less than twenty miles from Plaintiff's Quitman location, and engages in substantially the same business as Plaintiff. (Id. at ¶¶ 61, 64). Plaintiff alleges Hiers revealed to some of Plaintiff's customers that he was providing financial support to Irrigation Supply until the Non-Compete Agreement with Plaintiff expired. (Id. at ¶¶ 65-67).

### ***Litigation History***

In December 2017, Hiers sought a declaratory judgment against Plaintiff in the Superior Court of Brooks County to establish the unenforceability of the Non-Compete Agreement. (Id. at ¶ 68). Plaintiff counterclaimed for a judgment that the Non-Compete Agreement was enforceable. The Superior Court found the Non-Compete Agreement enforceable and entered a Consent Judgment in Plaintiff's favor on May 7, 2018. (Id. at ¶ 73). Under the terms of the judgment, Hiers, and all those in concert with him, including Blanchett and Ledesma, were enjoined from violating the terms of the Consent Judgment until January 2, 2020, the date the Non-Compete Agreement was scheduled to expire. (Id. at ¶ 75).

Plaintiff alleges Hiers acted in violation of the Superior Court's order and the Non-Compete Agreement by continuing to provide material support to

7

Irrigation Supply. (Id. at ¶ 77). Plaintiff further alleges that Hiers sold, leased, or otherwise permitted Irrigation Supply to use equipment owned or in the control of Hiers and that Irrigation Supply contracted with Hiers to design one or more irrigation systems. (Id. ¶¶ 78-82). Additionally, Plaintiff contends Hiers actively solicited Plaintiff's customers, placed advertisements for irrigation equipment, and promoted a new irrigation company he intended to open in Quitman across the street from Plaintiff. (Id. at ¶¶ 83-85). Hiers filed Articles of Incorporation for The Irrigation Store, Inc. with the Georgia Secretary of State on January 3, 2020, one day after the Non-Compete Agreement expired. (Id. at ¶ 86). Days later, Irrigation Supply ceased business, and Blanchett and Ledemsa joined Hiers at The Irrigation Store, Inc. (Id. at ¶ 88).

Plaintiff filed suit in this Court on September 11, 2018. (Doc. 1). Defendants moved to dismiss. (Docs. 17, 19). In response, Plaintiff filed its first Amended Complaint on October 24, 2018. (Doc. 25). Defendants then filed renewed motions to dismiss. (Docs. 28, 38). After carefully reviewing Plaintiff's Amended Complaint, the Court dismissed Plaintiff's claims for alleged breach of the APA against Hiers but permitted Plaintiff's breach of contract claim against the UIS, Inc. Defendants to proceed. Similarly, the Court dismissed Plaintiff's tortious interference claims against Irrigation Supply while allowing the claims to proceed against the individual Defendants. The Court further dismissed Plaintiff's claims for breach of the non-compete agreement, breach of fiduciary duty,

8

violation of the Georgia Trade Secrets Act, O.C.G.A. § 10-7-760, <u>et seq.</u>, and violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836. Finding that Plaintiff failed to state a claim for fraud, civil conspiracy, and aiding and abetting, the Court dismissed those claims but allowed Plaintiff to amend the claims. Plaintiff filed a Second Amended Complaint on July 2, 2021. (Doc. 67). That complaint is the subject of the pending motions to dismiss.

## II.   MOTION TO DISMISS STANDARD

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept "all well-pleaded facts . . . as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271,1273 n.1 (11th Cir. 1999). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint need not contain detailed factual allegations, it must provide "more than labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The allegations "must be enough to raise a right of relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

9

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Iqbal*, 556 U.S. at 678. Further, while a court must accept all factual allegations in a complaint as true, this principle "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Id.* The complaint must "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 556 (citation and internal quotations omitted).

## III.   DISCUSSION

### A.   Rule 12(g)(2)

Plaintiff contends Defendants' motions to dismiss are not properly before the Court. Plaintiff asserts the Second Amended Complaint raises essentially the same claims alleged in the Amended Complaint. According to Plaintiff, because Defendants previously moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), Defendants cannot now move a second time to dismiss those same claims.

Federal of Civil Procedure Rule 12(g)(2) provides, unless an exception[3] applies, "a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Failure to raise any defense listed in Federal Rule of Civil Procedure 12(b)(2)-(5) in an initial motion or responsive pleading results in waiver of that defense. Fed. R. Civ. P. 12(g)(2) and (h)(1). For example, "if a defendant moves before answer to dismiss the complaint for failure to state a claim, he is barred from making a further motion presenting the defense of improper venue, if that defense was available to him when he made his original motion." Fed. R. Civ. P. 12(g) advisory committee's note to 1966 amendment. The purpose of Rule 12(g) is to require consolidation of all defenses and objections within a single motion to avoid "piecemeal consideration of a case." Id.

Defendants move to dismiss Plaintiff's claims for fraud, civil conspiracy, and aiding and abetting.[4]  Defendants moved to dismiss these same claims as

---

[3] Rule 12(h)(2) provides that arguments regarding failure to state a claim, failure to join a party, or failure to state a legal defense to a claim may be raised in any pleading permitted under Rule 7(a); by motion under Rule 12(c); or at trial. Fed. R. Civ. P. 12(h)(2). And, under Rule 12(h)(3), lack of subject matter jurisdiction may be raised at any time. Fed. R. Civ. P. 12(h)(3). While Defendants argue that they could have raised their current arguments in a Rule 12(c) motion, they did not. They instead filed a motion to dismiss under Rule 12(b)(6). Accordingly, none of the exceptions anticipated by Rule 12(g)(2) apply.

[4] Defendants Hiers, Blanchett and Ledesma also moved to dismiss Plaintiff's claims for tortious interference with business and/or contractual relations (Count

stated in Plaintiff's Amended Complaint, and the Court granted Defendants' motion. However, the Court permitted Plaintiff the opportunity to amend the factual allegations in support of the deficient claims. Plaintiff asserts the same claims in the Second Amended Complaint. Defendants now move to dismiss the revised version of Plaintiff's claims for fraud, civil conspiracy, and aiding and abetting. Accordingly, this is not an instance where a defendant waived a defense that could have been raised in an earlier motion, and Rule 12(g)(2) does not apply.

Where, as here, a party files an amended complaint, the amended complaint "supersedes the initial complaint and becomes the operative pleading in the case." Lowery v. Ala. Power Co., 483 F.3d 1184 (11th Cir. 2007). However, "the filing of an amended complaint does not revive all defenses or objections that the defendant may have waived in response to the initial complaint." Krinsk v. SunTrust Banks, Inc., 654 F.3d 1194, 1202 (11th Cir. 2011) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1388 (3d ed. 2004). Nevertheless, the defendant "will be allowed to plead anew in response to an amended complaint, as if it were the initial complaint, when the amended complaint . . . changes the theory or scope of the case." Id. (quoting Brown v.

---

IV) and tortious interference with prospective business and/or contractual relations (Count V). Defendants later withdrew their motion to dismiss Counts IV and V. (Doc. 77, p. 10).

E.F. Hutton & Co., 610 F. Supp. 76, 78 (S.D. Fla. 1985)) (quotation marks omitted).

The Court is satisfied that Plaintiff's Second Amended Complaint added sufficient additional detail such the theory and scope of Plaintiff's claims has changed since the filing of the Amended Complaint. Defendants' motions to dismiss are therefore properly before the Court for consideration.

## B.     Fraud (Count III)

Count III of Plaintiff's Second Amended Complaint asserts a claim for fraud against Defendant Hiers and the two UIS, Inc. Defendants. Plaintiff alleges UIS, Inc. and Hiers made fraudulent representations to induce Plaintiff to enter into the APA and to agree to Hiers' related Employment Agreement and Non-Compete Agreement. (Doc. 66, ¶¶ 127-131). Plaintiff claims Hiers and UIS, Inc. knowingly made false statements to ensure consummation of the APA and that Defendants never intended to perform as promised under the APA. (Id. at ¶ 135). As a result of Plaintiff's reliance on these misrepresentations, Plaintiff has suffered damages, including lost revenue. (Id. at ¶ 136). Defendants move to dismiss Plaintiff's fraud claim, arguing that Plaintiff has stated nothing more than a claim for breach of contract.[5]

---

[5] Defendants also argue that Plaintiff's fraud claim is precluded by the economic loss rule, which provides generally "that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort. Gen. Elec. Co. v. Lowe's Home Ctrs., Inc., 279 Ga. 77, 78 (2005). Because the Court concludes

To establish a fraud claim under Georgia law, a plaintiff must show: "(1) a false representation or concealment of material fact; (2) scienter; (3) intent to induce the allegedly defrauded party to act or refrain from acting; (4) justifiable reliance; and (5) damages." <u>Young v. Oak Leaf Builders</u>, 277 Ga. App. 274, 278 (2006). "When evidence as to any one of these elements is lacking, the fraud claim fails. <u>Id.</u>

As a general principle,

Actionable fraud cannot be predicated upon promises to perform some act in the future. Nor does actionable fraud result from a mere failure to perform promises made. Otherwise, any breach of a contract would amount to fraud.

<u>Lumpkin v. Deventer North America, Inc.</u>, 295 Ga. App. 312, 314 (2008) (citation omitted). An exception arises "where a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place." <u>Id.</u>; <u>see also</u> <u>Rogers v. deMonteguin</u>, 193 Ga. App. 480, 481 (1989) (an exception to the general rule exists where the promisor knows at the time of the misrepresentation that the future event will not take place).

Plaintiff's Second Amended Complaint does not sufficiently allege each element of a fraud claim with the requisite particularity. <u>See</u> Fed. R. Civ. P. 9(b) (requiring a plaintiff to "state with particularity the circumstances constituting fraud"). Specifically, Plaintiff's complaint fails to establish Defendants' prior intent

---

Plaintiff has otherwise failed to state a claim for fraud, the Court does not address the application of the economic loss rule.

not to perform under the pertinent contracts. Plaintiff summarily states Hiers and the UIS, Inc. Defendants had "no present intent to perform as represented to Plaintiff in the APA, Employment Agreement, and Non-Compete Agreement." (Doc. 67, ¶ 135). Plaintiff neglects, however, to include any facts, which, if true, could be found by a jury to support Plaintiff's assertion that Defendants never intended to honor their obligations under the APA, Employment Agreement, or Non-Compete Agreement. Plaintiff articulates only what transpired following consummation of the contracts. The Court consequently **GRANTS** Defendants Hiers and UIS, Inc.'s motion to dismiss Plaintiff's fraud claim.

### C.    Civil Conspiracy (Count VI)

Count VI of Plaintiff's Second Amended Complaint sets out a claim for civil conspiracy. (Doc. 67, ¶¶ 161-162). Plaintiff alleges Defendants Hiers, Blanchett, Ledesma, and Irrigation Supply conspired to tortiously interfere with Plaintiff's current and prospective business and/or contractual relations as outlined in Counts IV and V of Plaintiff's Second Amended Complaint. Defendants maintain that Plaintiff's claim for civil conspiracy fails because Plaintiff has not alleged a viable underlying tort. See Mustageem-Graydon v. SunTrust Bank, 258 Ga. App. 200, 207 (2002) (holding that absent an underlying tort there can be no liability for civil conspiracy).

Defendant Hiers' argument that Plaintiff has alleged no underlying tort is linked to his motion to dismiss Plaintiff's tortious interference claims. However,

Hiers withdrew his opposition to the two tort law claims, thereby undermining his argument against the civil conspiracy claim. Because Hiers conceded Plaintiff's Second Amended Complaint sufficiently states a claim for tortious interference, he implicitly also conceded that Plaintiff stated a claim for civil conspiracy to engage in tortious interference. See Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Trust, 298 Ga. 221, 225 (2015) ("Tortious interference with a business relationship is a cause of action for which proof of a civil conspiracy will expand liability among all co-conspirators."). Defendants Hiers' motion to dismiss Count VI is therefore **DENIED**.

Defendant Irrigation Supply argues Plaintiff's civil conspiracy claim fails against Irrigation Supply because Plaintiff has not alleged that Irrigation Supply committed an underlying tort. Irrigation Supply's argument ignores the basic principles of conspiracy.

Georgia law provides that "[a] conspiracy upon which a civil action for damages may be founded is a combination between two or more persons either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort." Savannah Coll. of Art & Design, Inc. v. Sch. of Visual Arts of Savannah, Inc., 219 Ga. App. 296, 297 (1995) (citation omitted). "The gist of the action . . . is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage." Id. "The essential element . . . is the common design." Id. Anyone who knows of the conspiracy and its purpose once it is

formed "and joins therein, becomes a party thereto . . . as if he had been an original member." Id. The existence of a conspiracy may "be inferred from the nature of the acts done, the relationship of the parties, the interests of the alleged conspirators, and other circumstances." Metro Atlanta Task Force for the Homeless, 298 Ga. at 226.

Plaintiff's Second Amended Complaint alleges Irrigation Supply acted in concert with Hiers, Blanchett, and Ledesma to undermine Plaintiff's business operations. The fact that Plaintiff does not allege that Irrigation Supply is specifically liable for tortious interference does not preclude Plaintiff from asserting that Irrigation Supply knew that the three individual Defendants were engaged in a conspiracy to interfere with Plaintiff's business and that Irrigation Supply worked in concert with them to achieve that common goal. At this stage of the proceedings, these allegations are sufficient to permit Plaintiff to pursue a civil conspiracy claim against Irrigation Supply. Defendant Irrigation Supply's motion to dismiss Plaintiff's civil conspiracy claim is therefore **DENIED**.

### D.    Aiding and Abetting (Count VII)

In Count VII of the Second Amended Complaint, Plaintiff sets forth a three-part aiding and abetting claim. First, Plaintiff alleges Defendants Hiers, Blanchett, and Ledesma aided and abetted the UIS, Inc. Defendants to breach the APA. (Doc. 67, ¶ 165). Next, Plaintiff alleges Blanchett and Ledesma aided and abetted Hiers' breach of his Employment Agreement. (Id. at ¶ 166). Finally,

Plaintiff alleges Defendant Irrigation Supply aided and abetted Hiers, Blanchett, and Ledesma's tortious interference with Plaintiff's current and prospective business and/or contractual relations. (Id. at ¶ 167).

As with a claim for civil conspiracy, a claim for aiding and abetting cannot survive without an underlying tort. Premier/Georgia Mgmt. Co., Inc. v. Realty Mgmt. Corp., 272 Ga. App. 780, 787 (2005). Plaintiff's aiding and abetting claim is based, in part, on alleged breaches of the APA and Hiers' Employment Agreement. It is well established that a mere breach of contract does not constitute a tort. Leonard v. Firemen's Ins. Co., 100 Ga. App. 434, 435 (1959). A breach of contract amounts to a tort only where "in addition to breaching the contract, the defendant also breaches an independent duty imposed by law." USF Corp. v. Securitas Sec. Servs. USA, Inc., 305 Ga. App. 404, 408-08 (2010) (quotation marks and citation omitted). "The general rule in Georgia is that a breach of contract cannot constitute a tort unless a special or confidential relationship exists between the parties." Willis v. Allstate Ins. Co., 321 Ga. App. 496, 501 (2013). A confidential relationship arises when "one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." O.C.G.A. § 23-2-58. The party "asserting the existence of a confidential relationship has the burden of establishing its existence." Id.

Plaintiff has not pled facts sufficient to transform Plaintiff's breach of contract claims into tort claims. Plaintiff has pled the existence of neither an independent duty nor any type of special or confidential relationship. Accordingly, Plaintiff's claims that Hiers, Blanchett, and Ledesma aided and abetted any alleged breach of contract by the UIS, Inc. Defendants and that Blanchett and Ledesma aided and abetted an alleged breach of contract by Hiers are **DISMISSED**.

Defendant Irrigation Supply contends Plaintiff cannot maintain an aiding and abetting claim against it because Plaintiff has not alleged Irrigation Supply committed an independent tort. Plaintiff need not plead that Irrigation Supply directly participated in the alleged tortious interference to state a claim for aiding and abetting. To support a civil aiding and abetting claim, a plaintiff must show

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation.

Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983); Central Bank of Denver, N.A. v. First Interstate Bank of Never, N.A., 511 U.S. 164, 181 (1994) (describing Halberstam as a "comprehensive opinion on the subject"); see also Cox Adm'r U.S. Steel v. Carnegie, 17 F.3d 1386, 1410 (11th Cir. 1994).

Plaintiff has adequately pled a civil aiding and abetting claim against Irrigation Supply. As previously established, Plaintiff has plausibly alleged that

Defendants Hiers, Blanchett, and Ledesma tortiously interfered with Plaintiff's business and contractual relationships. Plaintiff has also pled that Irrigation Supply was generally aware of its role in the tortious interference and that Irrigation Supply knowingly assisted the individual Defendants in engaging in activities that negatively impacted Plaintiff's business. (Doc. 67, ¶ 167). If true, these allegations are enough for a jury to reach the conclusion that Irrigation Supply aided and abetted any tortious interference by Hiers, Blanchett, and Ledesma. Defendant Irrigation Supply's motion to dismiss Plaintiff's aiding and abetting claim is therefore **DENIED**.

### E.   Punitive Damages (Count VIII)

Defendants move to dismiss Plaintiff's claim for punitive damages based on their contention that Plaintiff has not established entitlement to relief for any tort claim. As discussed herein, Plaintiff has sufficiently set forth claims for tortious interference, civil conspiracy, and aiding and abetting. Should a jury award Plaintiff general damages for any of these claims, the jury may likewise award Plaintiff punitive damage. See Jenkins v. Gen. Hosps. of Humana, Inc., 196 Ga. App. 150, 151 (1990). Defendants' motion to dismiss Plaintiff's claim for punitive damages therefore **DENIED**.

### F.   Injunctive Relief (Count IX)

Plaintiff's claim for injunctive relief is premised on an anticipated breach of the Brooks County Consent Judgment and the Non-Compete Agreement as well

as on alleged misappropriation and use of Plaintiff's purported trade secrets. The Court dismissed any claim for misappropriation of trade secrets in the Court's order on Defendants' previous motions to dismiss. And both the state court order and the Non-Compete Agreement expired on January 2, 2020. Plaintiff's request for preliminary and permanent injunction accordingly is **DENIED as moot**.

## IV.   CONCLUSION

For the foregoing reasons, Defendants UIS, Inc. Georgia, UIS, Inc. Florida, and Hiers' Motion to Dismiss Plaintiff's Tort and Equitable Relief Claims of Second Amended Complaint (Doc. 71) is **GRANTED in part** and **DENIED in part**. Defendant Irrigation Supply's Motion to Dismiss (Doc. 70) is **DENIED**.

**SO ORDERED**, this 13th day of June, 2022.


_s/ Hugh Lawson_____
**HUGH LAWSON, SENIOR JUDGE**

aks